EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPECTRA MEDICAL DEVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY CHARLES ARRIGO, ANTHONY EDWARD ARRIGO and ARRIGO MEDICAL, LLC <br><br> Defendants. | Case No.: 1:22-cv-11796-ADB |

**DEFENDANTS ANTHONY E. ARRIGO, ANTHONY C. ARRIGO, AND ARRIGO MEDICAL, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF SPECTRA MEDICAL DEVICES, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the applicable Local Rules of this Court, Defendants Anthony Charles Arrigo, Anthony Edward Arrigo and Arrigo Medical, LLC (collectively referred to herein as "Defendants") hereby serve their First Request for Production of Documents upon Plaintiff Spectra Medical Devices, LLC ("Spectra"). Spectra shall respond to these requests in writing according to the Definitions and Instructions contained herein and produce all responsive documents to Todd & Weld LLP, One Federal Street, 27th Floor, Boston, Massachusetts 02110 *electronically in accordance with the Specifications for Production of Electronically Stored Information set forth below*.

**INSTRUCTIONS**

1.      These requests are continuing in character, up to and during the course of the trial, so as to require supplemental answers if you or any of your agents, employees, representatives, or counsel obtain further or different information after the production of any or all of the following documents.  Such additional production shall be served from time to time, but no later than seven (7) days after such additional documents are discovered.

2.      In responding to these requests, you must make a diligent search of your records and of other papers and materials in your possession or available to you or to your attorneys or other representatives.

3.      In response to these requests for production of documents, you are requested to respond in writing and state, as to each request, a) that there are documents responsive to the request which you will produce; b) that there are documents responsive to the request but that you refuse to produce them because of a claim of privilege or for some other reason; or c) that no such documents exist responsive to the request.

4.      If you claim any privilege in response to any of these requests, please identify with specificity the document for which you claim such privilege; state in the fullest terms short of waiver the information it contains; and state the basis for your claim of privilege or other ground of exclusion in sufficient detail so as to permit a court to adjudicate the validity of your denial of the request to produce the document.  In addition, please identify all persons who have had access to such document or the information contained therein and all persons who have or who have had possession of such document.

5.      If you are unable to respond to any request fully and completely, supply the documents that are known or available and explain why your response is incomplete, the efforts you have made to obtain the documents, and the source from which all responsive documents may be obtained.

6.      As to any request for documents which no longer exist but which you were aware existed at one time, please identify such documents and, in addition, identify the last known location and the reason such documents no longer exist.

7.     In the event you object to any request as overbroad for any reason, please respond that that request as narrowed in such a way as to render it not overbroad, and please state the extent to which you have narrowed the request for production for the purposes of your response.

8.     The following rules of construction apply to each of these discovery requests:

(a)     The terms "all" and "each" shall be construed as "all and each";

(b)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)     The use of the singular form of any word includes the plural and vice versa;

(d)     These requests are to be construed broadly, and construction of their terms should be inclusive and in favor of providing an affirmative response; and

(e)     If any portion of any of these requests is objected to, the remaining non-objectionable portions are to be responded to fully and completely.

**SPECIFICATIONS FOR PRODUCTION OF
ELECTRONICALLY STORED INFORMATION**

1.     All documents should be formatted and produced in single-page TIFF format, with corresponding multi-page text files containing the extracted text or OCR, and with corresponding metadata files.  The filename of the image, text, and metadata files should correspond to the Bates number on the first page of the document. The Bates number should have a prefix and contain 6 digits and no spaces, for example SAMPLE000001. All documents should be produced as a Relativity loadable export, with corresponding image, text, and metadata files.

2.     For documents maintained electronically, the following fields should be included, at a minimum: Bates Begin; Bates End; Bates Begin Attach; Bates End Attach; Pages; Author;

Custodian/Source; Date Created; Date Last Modified; Date Received; Date Sent; Time Sent; Document Extension; Email BCC; Email CC; Email From; Email Subject/Title; Email To; Original Filename; File Size; Original Folder Path; MD5 Hash; Parent Document ID; Document Title; Time Zone; Text Link; Native Link.  Time zone values should be adjusted to UTC.

3.      For any electronically stored documents that cannot be converted to a TIFF (including, but not limited to, spreadsheets, presentations, databases, logs, video, and audio files), you should produce a Bates numbered TIFF placeholder and a native version of that file, with the native version named by its Bates number.

## **DEFINITIONS**

As used herein, the words and phrases set out below shall have the following meanings:

1.      The Uniform Definitions in Discovery Requests in Local Rule 26.5 are incorporated herein.

2.      The term "all documents" means every "Document," in whatever form (e.g., electronic, database, email, text message, handwritten, or otherwise) including all metadata as defined in the Definitions incorporated by reference above, which can be located or discovered by reasonably diligent efforts.  If more than one version or copy of a document exists and any such version or copy bears marking or notations which are not on other versions or copies of the document, each such version or copy is included within the meaning of the term "document."

3.      The term "communications" includes all letters, telegrams, notices, messages, e-mail, text messages, social media postings and communications (including Facebook, Twitter, LinkedIn, Instagram, Snapchat, TikTok, YouTube, WhatsApp, etc.), Internet usage files, computer bulletin board information or logs, and other written communication, computerized communications or memoranda, and any records of conversations, meetings, conferences or other oral communications, and all associated metadata.

4.      "Concerning" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, relating to or pertaining to, in whole or in part.

5.      "Person" means any natural person, corporation, company, association, firm, partnership, proprietorship, joint venture, or other business or legal entity, and any officers, directors, employees, agents, servants, attorneys, or representatives of any such entity.

6.      A "representative" of a person means any officer, director, agent, employee, attorney, or other representative of such person.

7.      An "affiliate" of any entity means any person who, directly or indirectly, controls, or is controlled by, or is under common control with such entity.  The term "control" and its correlatives, as used above, means the possession, whether direct or indirect, or the power to direct or to cause the direction of the management and policies of a person, whether through ownership of an entity interest, by corporate position, by contract, or otherwise.

8.      The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

9.      The words "and" and "or" shall be construed either conjunctively or disjunctively, meaning "and/or," to make the scope of the request as broad as possible.

10.      "Confidential Information" means information, contained in any medium and whether or not in writing, of a confidential or proprietary nature (regardless of whether it is marked as such) of or that pertains or relates to the actual or prospective business, financial affairs or operations of Plaintiff, its subsidiaries or any of its affiliates which affiliates are engaged in the same business as Plaintiff and/or its subsidiaries (each, a "Group Member" and collectively, the "Group Members"), or with respect to which any Group Member is bound by a duty of confidentiality, in each case, whether disclosed, directly or indirectly,

verbally, in writing or by any other means in tangible or intangible form and whether having existed, now existing or created during the term of Anthony E. or Anthony C. Arrigo's employment and that is not publicly-available or known to its and their respective competitors, Including, without limitation, that which is made, created, authored, discovered, developed, invented, conceived, composed, performed, perfected, learned or reduced to practice by Anthony E. Arrigo or Anthony C. Arrigo.

11.     "Equity and Asset Purchase Agreement" means the Equity and Asset Purchase Agreement entered into by Spectra Medical Devices, LLC, and Spectra Medical Devices, Inc., on October 1, 2021, and all Exhibits thereto.

12.     "Identify" when used in reference to a natural person means to state his or her full name, present residential address and home telephone number, present business address and business telephone number, or if the above are not known, such information as was last known, and his or her residential address, home telephone number, business title, business affiliation, business address, and business telephone number at the time in question. When used in reference to a Document, "Identify means to state the type of Document (e.g., letter, memorandum, contract, email, etc.), its date, the general subject matter of the Document with sufficient particularity so as to enable such Document to be precisely identified, its author(s), addressee(s), and its present location or custodian. When used in reference to an act, occurrence, transaction, decision, statement, communication, or conduct (hereinafter collectively referred to as "act"), "Identify: means to describe in substance the event or events constituting such act or what transpired, the place and date thereof, and to identify the persons present, the persons involved, and the documents referring or relating thereto.

13.     "Including" means including, but not limited to.

14.     "Plaintiff," "You," "Your," or "Yourself" refers means Spectra Medical Devices, LLC.

15.     "Spectra Medical Device, LLC" means Plaintiff Spectra Medical Device, LLC, its agents, representatives, all persons acting on its behalf, and any and all other persons associated with, affiliated with, or controlled by it, including but not limited to any attorneys acting on its behalf.

16.     "Arrigo Medical" means Arrigo Medical, LLC, its agents, representatives, all persons acting on its behalf, and any and all other persons associated with, affiliated with, or controlled by it, including but not limited to any attorneys acting on its behalf

17.     "Agustin Turriza" means Agustin Turriza and his agents, representatives, attorneys, all persons acting on his behalf, and any and all persons associated with, affiliated with, or controlled by him.

18.     "Anthony Charles Arrigo" means Anthony Charles Arrigo and his agents, representatives, attorneys, all persons acting on his behalf, and any and all persons associated with, affiliated with, or controlled by him.

19.     "Anthony Edward Arrigo" means Anthony Edward Arrigo and his agents, representatives, attorneys, all persons acting on his behalf, and any and all persons associated with, affiliated with, or controlled by him.

20.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

## DOCUMENT REQUESTS

1.      Any documents identified or disclosed in your Initial Disclosures made in accordance with Fed. R. Civ P. 26(a)(1)(B).

2.      Any documents or emails referenced in the Plaintiff's Complaint.

3.      Any and all documents evidencing the Defendants' ownership interest in Spectra.

4.      Any and all documents related to, concerning, supporting, evidencing or constituting any and all products manufactured, offered for sale, or in development by Spectra since January 2019 to present.

5.      For the time period January 1, 2022 to the present, any and all emails forwarded to Anthony Charles Arrigo's Spectra email address which concern matters unrelated to Spectra's business including but not limited to non-business matters, personal matters, travel, health or medical information, personal bills, invoices or expenses, automobile bills or invoices and spam.

6.      All documents reflecting product catalogs or other materials which reflect, identify or evidence the products which Spectra manufactures or sells to the public.

7.      Any and all documents which evidence, identify or concern any plans by Spectra to develop, manufacture or sell products which is does not currently sell to the public.

8.      Documents sufficient to Identify the "Spectra business" with which Anthony E. Arrigo was restricted from competing, directly or indirectly, as alleged in Paragraph 34 of the Complaint.

9.      Any and all documents which reflect "Arrigo Sr.'s and Old Spectra's fraud in connection with the" Equity and Asset Purchase Agreement, the Restrictive Covenant Agreement or the Amended & Restated Limited Partnership Agreement of NQ PE Project Hogan Aggregator, L.P. as alleged in Paragraph 38 of the Complaint.

10.     Any and all documents which identify, reveal or confirm "Defendants' effort to destroy and conceal" as alleged in Paragraph 38 of the Complaint.

11.     Any and all documents relating to Joyce Medical.

12.     Any and all documents relating to Anthony Charles Arrigo's departure from Spectra.This request includes draft announcements, communications concerning the announcement, the announcement itself and communications concerning his departure.

13.     Any and all documents relating to Anthony Edward Arrigo's departure from Spectra.  This request includes draft announcements, communications concerning the announcement, the announcement itself and communications concerning his departure.

14.     A complete copy of Spectra's Employee Handbook as referred to in paragraph 69 of the Complaint.

15.     Any and all documents reflecting communications with the "outside auditor" referenced in Paragraph 71 of the Complaint.

16.     Any and all documents reflecting communications about the findings or conclusions of the "outside auditor" referenced in Paragraph 71 of the Complaint.

17.     Any and all materials provided to or reviewed by the "outside auditor" referenced in Paragraph 71 of the Complaint.

18.     Any reports, summaries, memos or other work product prepared by the "outside auditor" referenced in Paragraph 71 of the Complaint.

19.     Any and all documents reflecting Old Spectra "improperly accelerat[ing] revenue on its balance sheet and profit and loss statements" as referenced in Paragraph 72 of the Complaint.

20.     Any and all documents reflecting communications concerning any alleged improper acceleration of revenue by Old Spectra on its balance sheet or profit and loss statement.

21.     Any and all documents which evidence Anthony Charles Arrigo's direction to Old Spectra employees "to send those goods to customers far in advance of the dates on which its customers wanted, needed or requested those goods" as alleged in Paragraph 73 of the Complaint.

22.     For each "customer" Spectra claims that Anthony Charles Arrigo directed Old Spectra employees "to send those goods to customers far in advance of the dates on which its customers wanted, needed or requested those goods," all documents which reflect communications with that customer for the time period January 1, 2020 to the present.

23.     For each "customer" Spectra claims that Anthony Charles Arrigo directed Old Spectra employees "to send those goods to customers far in advance of the dates on which its customers wanted, needed or requested those goods," and for the time period January 1, 2020 to the present, documents sufficient to identify all goods shipped to the customer, the date when the goods were shipped to the customer, the date the goods were received by the customer and the date when Spectra recorded the revenue associated with those goods within its general ledger.  This request includes documents reflecting revenue recognition both before and after the execution of the Equity and Asset Purchase Agreement ("EAPA").

24.     For the time period January 1, 2020 to the present, any and all documents which reference or relate shipping delays to China.

25.     Any and all documents which evidence Anthony Charles Arrigo's direction to Old Spectra employees "to record the revenue associated with those goods as revenue earned on or around the date of shipment" as alleged in Paragraph 73 of the Complaint.

26.     Any and all documents which reflect, relate or concern the negotiation of any proposed, contemplated, modified or actual purchase price under the EAPA.

27.     Any and all documents which reflect, relate or concern the utilization of an EBIDA multiple in connection with the EAPA purchase price.

28.     Any and all documents which establish the dates upon which financial offers were extended to Anthony Charles Arrigo concerning the proposed, contemplated or actual purchase of Old Specta's equity and/or assets.

29.     Any and all documents which reflect communications with Anthony Charles Arrigo concerning the proposed, contemplated or actual purchase of Old Spectra's equity and/or assets.

30.     Any Quality of Earnings Report prepared with regard to Old Spectra and/or its financial condition at any time.

31.     Any and all documents reflecting the "revenue projections provided to the buyer" as alleged in Paragraph 74 of the Complaint, including documentation reflecting the date upon which the projections were provided.

32.     The "approximately 24,000 items" which "Arrigo Jr. deleted" as referenced in Paragraph 80 of the Complaint.

33.     The "approximately 60 items" which Arrigo Jr. deleted "from the Recoverable Items box" as alleged in Paragraph 80 of the Complaint.

34.     All evidence which substantiates the claim that Arrigo Jr.'s "total volume of deletion far exceeded the volume of deletions Arrigo Jr. undertook in the ordinary course of his employment" as alleged in Paragraph 80 of the Complaint.

35.     All documents which evidence the volume of deletion undertaken by Anthony Edward Arrigo on his Outlook account prior to June 12, 2022.

36.     The "approximately 44,000 items" which Agustin Turriza performed a "soft delete on" as alleged in Paragraph 81 of the Complaint.

37.     The "approximately 51,000 items" which Agustin Turriza performed a "hard delete on" as alleged in Paragraph 81 of the Complaint.

38.     All documents which reflect the litigation hold referenced in Paragraph 82 of the Complaint.

39.     For the time period January 1, 2020 to the present, all phone records reflecting phone calls placed between Agustin Turriza and Anthony Charles Arrigo.

40.     For the time period January 1, 2020 to the present, all phone records reflecting phone calls placed between Agustin Turriza and Anthony Edward Arrigo.

41.     For the time period January 1, 2020 to the present, any text messages exchanged between Agustin Turriza and Anthony Charles Arrigo.

42.     For the time period January 1, 2020 to the present, any text messages exchanged between Agustin Turriza and Anthony Edward Arrigo.

43.     For the time period January 1, 2020 to the present, any emails exchanged between Agustin Turriza and Anthony Charles Arrigo.

44.     For the time period January 1, 2020 to the present, any emails exchanged between Agustin Turriza and Anthony Edward Arrigo.

45.     Any and all documents which confirm and/or evidence "Turriza spending part of his time in South Korea meeting with key Spectra contacts and others regarding Defendant's new competing business" as alleged in Paragraph 94 of the Complaint.

46.     Any and all documents which support the claim that Arrigo Medical, LLC and Spectra are competitors.

47.     Documents sufficient to identify the "key Spectra contacts" referenced in Paragraph 94 of the Complaint.

48.     Documents which identify or disclose "Spectra's customers, vendors, suppliers and employees" who have been contacted by Defendants "in connection with their operation of or employment by Arrigo Medical and/or any other competing business in an effort to divert business and employees from Spectra to their competing business" as alleged in Paragraph 95 of the Complaint.

49.     All documents which evidence, relate to or concern Defendants' contact with "Spectra's customers, vendors, suppliers and employees" "in connection with their operation of or employment by Arrigo Medical and/or any other competing business in an effort to divert business and employees from Spectra to their competing business" as alleged in Paragraph 95 of the Complaint.

50.     Any and all documents which evidence Spectra's manufacturing or shipping of guidewires. This request includes but is not limited to purchase orders or shipping invoices.

51.     All Documents submitted by Spectra to the U.S. Food and Drug Administration ("FDA"), including documents concerning registration, premarket notification, and medical device approval.

52.     Any and all FDA approval received by Spectra for any product or service, including but not limited to guidewires.

53.     For the time period June 1, 2022 to the present, any and all communications with the "Spectra customer" identified in Paragraph 101 of the Complaint.

54.     Any and all documents which evidence "Spectra working toward entering the market for guidewires" as alleged in Paragraph 101 of the Complaint.

55.     Copies of all approximately 27,000 emails allegedly deleted by Agustin Turriza as alleged in Paragraph 108 of the Complaint.

56.     Copies of the emails identified in Paragraph 110 of the Complaint.

57.     All documents which evidence or confirm the fact that "Arrigo Sr. was in active discussions to sell Old Spectra in October, 2020" as alleged in Paragraph 110 of the Complaint.

58.     Any confidentiality or non-disclosure agreements executed by Old Spectra at any time concerning the potential sale of Old Spectra's assets or equity.

59.     Any and all emails forwarded by Anthony Charles Arrigo from his Spectra email address which include only text in the subject line of the email.

60.     Any and all emails deleted by the Defendants with contain "Spectra's confidential information and or trade secrets" as alleged in Paragraph 116 of the Complaint.

61.     The "digital forensic evaluation" identified in Paragraph 118 of the Complaint. This request includes any reports, summaries or memoranda.

62.     Any communications concerning the "digital forensic evaluation" identified in Paragraph 118 of the Complaint.

63.     Any draft versions of the "digital forensic evaluation" identified in Paragraph 118 of the Complaint.

64.     Any summaries, memoranda or notes of any interview with Agustin Turriza, including but not limited to the interview referenced in Paragraph 122 of the Complaint.

65.     Any communications concerning any interviews of Agustin Turriza, including but not limited to the interview referenced in Paragraph 122 of the Complaint.

66.     Any statements, whether written or oral, obtained from Agustin Turriza at any time.

67.     For the time period July 1, 2022 to the present, any contract or agreement executed by Agustin Turriza or his legal counsel.

68.     Any drafts of any statements, whether written or oral, provided to or obtained from Agustin Turriza or his counsel at any time.

69.     Any statements, whether recorded or written, obtained from any witness with information pertaining or relating to Anthony Charles Arrigo, Anthony Edward Arrigo, Agustin Turriza or Arrigo Medical, LLC.

70.     Any communications between Agustin Turriza and/or his representatives, on one hand, and any representative of Spectra, including outside legal counsel, on the other, from the time period September 20, 2022, 2022 to the present.

71.     A copy of counsel's letter to Agustin Turriza referenced in Paragraph 127 of the Complaint.

72.     Documents which evidence or substantiate Agustin Turriza's attempt to buy a new $1,500 iPhone using a company account as alleged in Paragraph 128 of the Complaint.

73.     Any and all documents which evidence the Defendants competing with Spectra.

74.     All Documents related to, concerning, supporting, evidencing or constituting Your allegation in the Complaint that any of the Defendants are or have "been scheming to operate a competing business in violation of restrictive covenants, and using Spectra's trade secrets to do so."

75.     Any and all Documents related to, concerning, supporting, evidencing or constituting the Defendants or their agents (a) soliciting any of Spectra's customers, vendors, suppliers, and employees after leaving Spectra, and/or (b) owning, operating, managing, controlling, advising, being employed by, or being connected in any way with a competing business during his employment with Spectra and for a period of 12 months following termination of his employment.

76.     Any and all documents which evidence Defendants' misuse of Spectra confidential information.

77.     Any and all documents which evidence Defendants' misuse or misappropriation of Spectra's trade secrets.

78.     Any and all documents which relate, reflect or concern Spectra's contention that all information on any of the Defendants' iPhones are Spectra property or that Spectra is entitled to access all information on any of the Defendants' iCloud account, including his personal, private, and/or privileged data, information, documents, or photos.

79.     All documents related to, concerning or constituting Spectra's contention that it does not have possession of or access to any Confidential Information or Documents as a result of any actions taken by or at the direction of any Defendant.

80.     Documents that describe, pertain to, or explain the process by which Spectra maintains backups of its employees' email accounts, including, without limitation, any of the Defendants' email account.  This request includes, but is not limited to, policies and procedures.

81.     For the time period January 1, 2020 to the present, any Spectra's document retention policy.

82. Any and all documents related to, concerning or constituting instances where Spectra instructed or directed any of its employees, including without limitation any of the Defendants, not to delete emails from their email accounts.

83. All documents which reflect, relate to or concern Spectra's demands for the return of its property from any of the Defendants.

84. Documents reflecting Purchase Orders for the following:

| Customer Name | File Name | Invoice # | Invoice Date |
|---|---|---|---|
| Forefront | 4419106 | 178625 | 6/28/2021 |
| ForeFront | 4431696 | 178712 | 6/20/2021 |
| ForeFront | 4436389 | 178828 | 6/30/2021 |
| ForeFront | 4436598 | 178829 | 6/30/2021 |
| ForeFront | 4437614 | 178832 | 6/30/2021 |
| ForeFront | 4537910 | 179247 | 7/30/2021 |
| ForeFront | 4537911 | 179248 | 7/30/2021 |
| ForeFront | 4539473 | 179295 | 7/30/2021 |
| ForeFront | 4539474 | 179296 | 7/30/2021 |
| ForeFront | 4544082 | 179301 | 7/30/2021 |
| ForeFront | 4565588 | 179347 | 8/31/2021 |
| ForeFront | 4576542 | 179384 | 8/31/2021 |
| ForeFront | 4611799 | 179535 | 8/31/2021 |
| ForeFront | 4612580 | 179539 | 8/31/2021 |
| ForeFront | 4622659 | 179568 | 8/31/2021 |
| ForeFront | 4643407 | 179680 | 8/30/2021 |
| ForeFront | 4643618 | 179692 | 8/31/2021 |
| ForeFront | 4729783 | 179871 | 9/20/2021 |
| ForeFront | 4732427 | 179903 | 9/30/2021 |
| ForeFront | 4733375 | 179926 | 9/30/2021 |
| ForeFront | 4733490 | 179930 | 9/30/2021 |
| ForeFront | 4733491 | 179931 | 9/30/2021 |
| ForeFront | 4764355 | 180059 | 9/28/2021 |
| ForeFront | 4778238 | 180174 | 9/30/2021 |

85. Any and all contracts, agreements or amendments thereto for the following Spectra customers/clients: Forefront, Advant, Teleflex, Diros, Peters Technology and Pajunk.

86. For the time period January 1, 2020 to the present, any and all communications with the representatives from any of the following Spectra customers/clients: Forefront, Advent, Teleflex, Diros, Peters Technology, and Pajunk which pertain, relate or concern the shipment of products or payment for such products.

14

87.     Any Spectra internal policies concerning revenue recognition and shipment of products.

88.     Any documents which describe, relate to or demonstrate Spectra's efforts or intention to maintain the confidentiality of its customer and pricing list, information about Spectra's quality and regulatory programs, product development, supply chain, manufacturing processes, research and development, customer needs, vendor list, and/or product list from public disclosure.

Respectfully submitted,

ANTHONY EDWARD ARRIGO
ANTHONY CHARLES ARRIGO and ARRIGO
MEDICAL, LLC

By their attorneys,

*/s/ Bradley L. Croft*
Bradley L. Croft (BBO #633347)
Roger L. Smerage (BBO #675388)
**RUBERTO, ISRAEL & WEINER, P.C.**
255 State Street, 7th Floor
Boston, MA 02109
(617) 742-4200 (phone)
(617) 742-2355 (fax)
blc@riw.com
rls@riw.com

David H. Rich (BBO # 634275)
drich@toddweld.com
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Dated:  November 14, 2022

15

## <u>CERTIFICATE OF SERVICE</u>

I, David H. Rich, hereby certify that on 14th day of November 2022, I caused a copy of the foregoing *First Request for Production of Documents* to be served upon counsel of record by email.

/s/ David H. Rich
David H. Rich, Esq.